IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TIMOTHY LEWIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. **03-635 - WDS** |
| | ) | |
| **PAM GRUBMAN ,** | ) | |
| **and WILLIAM REES,** | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge William D. Stiehl pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is Defendants' Motion for Summary Judgment with Supporting Brief. **(Doc. 90)**. Plaintiff, who is represented by counsel, filed a response at **Doc. 93**. Plaintiff also filed a Response and Statement of Additional Undisputed Facts. **(Doc. 94)**. Defendants filed a reply. **(Doc. 95)**.

## Nature of Plaintiff's Claims

Plaintiff Timothy Lewis is an inmate in the custody of the Illinois Department of Corrections. He filed suit under 42 U.S.C. §1983, alleging that his Eighth Amendment rights were violated by defendants' deliberate indifference to his serious medical needs while he was assigned to Menard Correctional Center.

Plaintiff filed his original complaint pro se. He alleged that he began suffering headaches in late September, 2002. On one occasion, he passed out and lost vision in his right eye. He was treated by medical staff at Menard, and at Chester Memorial Hospital. He does not complain about any of that treatment. His claim arises out of the events of October 21, 2002, when he was sent to an outside eye specialist, Dr. Fleming, in Belleville, Illinois. Dr. Fleming examined him

1

and ordered that he be transferred to St. Louis University Hospital in St. Louis, Missouri, because he detected hemorrhaging behind plaintiff's eye. Dr. Fleming thought that plaintiff might be experiencing a stroke.

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs in that they delayed his transfer for over five hours. During that time, he experienced dizziness and sporadic loss of consciousness. Plaintiff was transferred to SLU Hospital later that day, and was operated on the next day for a brain aneurysm. The court dismissed all claims on preliminary review. **(Doc. 5)**.

Plaintiff appealed, and the Seventh Circuit reversed and remanded as to defendants Grubman, Rees, and Doughty only. In its nonprecedential disposition, the Seventh Circuit held that, as to these three defendants, "the complaint adequately states a claim for deliberate indifference in connection with Lewis's delayed transfer to the hospital. It remains to be seen whether these defendants understood the urgency of the situation and what accounted for their delay in authorizing the transfer." ***Lewis v. Kumar***, 146 Fed.Appx. 55, 57 (7th Cir. 2005).

Following remand, Lewis filed a pro se amended complaint, **Doc. 27**, which is now the operative complaint. The Amended Complaint did not change the allegations as to Grubman, Rees, and Doughty. **See, Doc. 27, p. 2**. Counsel entered for plaintiff a few months later. **See, Docs. 34 & 36.** Doughty was dismissed by stipulation of the parties on October 30, 2007. **(Doc. 83).**

## Grounds for Summary Judgment

Defendants filed a previous motion for summary judgment, which was denied. **See, Docs. 82 & 89.**

In their first Motion for Summary Judgment, defendants Grubman and Rees argued that

2

they were entitled to qualified immunity because they did not violate a clearly established constitutional right. They argued that "Defendants, as prison administrators, had the right to rely upon the opinions of medical professionals who were providing Plaintiff with medical care and did not have the authority to order the transfer of the Plaintiff without an order from a treating physician." **Doc. 75, p. 4.** In addition, they argued that plaintiff's medical records establish that he suffered no harm from the delay in transferring him to St. Louis University Hospital. *Id*. This court recommended that the motion be denied because the record before the court did not establish the fact necessary to support defendants' arguments. This court noted, "The exhibits do nothing at all to establish what role either defendant played in authorizing the transfer. The record is devoid of any explanation of why there was a delay of over five hours in transferring plaintiff from the doctor's office to the hospital." **See, Report and Recommendation, Doc. 82, p.5.** Defendants did not file any objection to the Report and Recommendation, and same was adopted. **See, Doc. 89.**

The instant Motion for Summary Judgment makes essentially the same arguments, but is supported by additional exhibits. Exhibit A to **Doc. 90** is the complete transcript of Grubman's deposition. Exhibit B is 7 pages of records from St. Louis University Hospital. Exhibit C is the complete transcript of Rees' deposition. The motion refers to Exhibits D and E, but same are not attached.

Pam Grubman was the Health Care Unit Administrator and William Rees was a shift commander at Menard Correctional Center at the relevant time. They now argue that they are entitled to summary judgment because the record establishes that they did not have the requisite personal involvement in causing the delay in transferring plaintiff to SLU Hospital. As they did in the first motion, they also argue that they are entitled to qualified immunity because plaintiff was under a doctor's care, and as non-medical prison officials, they were entitled to rely on the

doctor to make the appropriate medical decisions, and that plaintiff suffered no harm from the delay in treatment.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," ***Anderson*, 477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. ***Anderson*, 477 U.S. at 248; see also, *JPM Inc. v. John Deere Industrial Equipment Company*, 94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the

4

suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. **Clifton v. Schafer, 969 F.2d 278, 281 (7th Cir. 1992).**

## Analysis

In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test enunciated in **Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)**. The test has an objective and a subjective component. That is, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard. **Reed v. McBride, 178 F. 3d 849, 852 (7th Cir. 1999).** Liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. **Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)**. Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

The court first notes that both defendants and plaintiff have filed lists of "Material Facts Claimed To Be Undisputed." Some Districts require the moving party to include such a list with its motion for summary judgment. See, e.g., U.S. District Court Rules, Northern District of Illinois, Rule 56.1. This District, however does not.

Many of the facts that are claimed to be undisputed here are, in fact, disputed. **See, Docs. 94 & 95.**

Resolution of the motion really boils down to the question of whether the record establishes that Grubman and Rees were not personally responsible for the delay in transferring Lewis to St. Louis University Hospital, or for the failure to transfer him to St. Mary's Hospital in East St. Louis to await transfer to SLU Hospital.

The court has considered the statements of undisputed facts and the parties' responses thereto, as set forth in **Docs. 94, 94, & 95**, and will summarize the facts that are actually

5

undisputed. The parties agree that, on October 21, 2002, Lewis was taken to Dr. Fleming's office in Belleville, Illinois, for a 9:00 a.m. appointment. He was escorted by IDOC guards Ronald Miller and Scot Ebers. During his examination, Dr. Fleming became concerned that Lewis could be suffering a stroke. Dr. Fleming refused to return Lewis to Menard and demanded that he be immediately transferred to the neurology department at SLU Hospital. **Doc. 94, ¶¶ 1-4; Doc. 95, ¶¶ 1-4**. Dr. Fleming called Menard and spoke with Dr. Kumar, who was the duty physician, to arrange the transfer. Dr. Kumar contacted Dr. Feinerman, who was the medical director, to get pre-certification for the transfer. **Doc. 94, ¶¶ 40-41; Doc. 95, ¶¶ 40-41.**

SLU Hospital records establish that plaintiff was admitted to St. Louis University Hospital in St. Louis, Missouri, at 4:23 p.m. on that same day. **Doc. 94, ¶5; Doc. 95, ¶5.**

Defendants refuse to stipulate to the exact length of time it took to get plaintiff to St. Louis University Hospital because they say that the record does not establish at what time Dr. Fleming actually examined plaintiff and made the determination that Lewis should be transferred to St. Louis University. **Doc. 95, ¶ 5**.

The parties further agree that defendant Rees was shift commander on that day, and, as such, was the contact point for security staff who were escorting Lewis while on medical furlough, i.e., while he was out of the correctional facility for medical treatment. He was the escort staff's primary contact point and was responsible for monitoring the status of Lewis' medical furlough. **Doc. 94, ¶¶ 24-32; Doc. 95, ¶¶ 24-32.**

Grubman was the Health Care Unit Administrator at Menard. The parties agree that she was responsible for ensuring that the medical care offered to inmates was in compliance with applicable policies and procedures. **Doc. 94, ¶¶ 15-16; Doc. 95, ¶¶15-16.** However, the parties disagree as to the nature and extent of her involvement in facilitating the transfer of plaintiff to

SLU Hospital. **Doc. 94, ¶¶ 17-21; Doc. 95, ¶17-21.**

The parties agree that Lewis was never actually taken to St. Mary's Hospital in East St. Louis on October 21, 2002. Plaintiff maintains that the records establish that the doctors at Menard, Drs. Kumar and Feinerman, ordered that plaintiff was to be taken to St. Mary's pending his transfer to St. Louis University Hospital. Defendants maintain that "it was considered to send the Plaintiff to St. Mary's Hospital, not that it was ordered." **Doc,. 95, ¶43.**

The parties agree that it is generally a quick process to obtain pre-certification approval for emergency transfers for medical care, and it usually takes only as long as it takes to make contact by phone. On the security side, the escort staff generally receive clearance to transfer an inmate to another location almost immediately in the case of a medical emergency. **Doc. 94, ¶¶ 36-38; Doc. 95, ¶¶ 36-38.**

This motion should be denied for the same reason that defendants' first motion for summary judgment was denied. "The initial burden is on the moving party to identify those portions of the record that demonstrate the absence of a genuine issue of material fact." ***Johnson v. City of Fort Wayne, Indiana*, 91 F.3d 922, 931 (7th Cir. 1996)**. Defendants have failed to carry that burden here. Defendants have presented no facts responsive to the issues identified by the Seventh Circuit in its order remanding the case, i.e., "whether these defendants understood the urgency of the situation and what accounted for their delay in authorizing the transfer." ***Lewis v. Kumar*, 146 Fed.Appx. 55, 57 (7th Cir. 2005).** The facts are in dispute as to what role either defendant played in authorizing the transfer. The record is still devoid of any explanation of the central issue in this case, that is, why, in view of Dr. Fleming's opinion that plaintiff may have been suffering a stroke, there was a delay of some hours in transferring plaintiff from the doctor's office to the hospital. In addition, it is unclear whether a doctor ordered that plaintiff be taken to St. Mary's Hospital to await transfer to St. Louis University, and, if so, why that was not

done.

Defendants also argue that the delay in transferring plaintiff to the hospital caused him no harm because no surgical procedures were done until the morning after admission. However, this argument ignores the fact that, when Lewis was examined by a nurse at 5:00 p.m., he was noted to be suffering from blurred vision and headache, and that Lewis requested pain medication at 8:30 p.m. Pain medication could not be started until a doctor was consulted. A Dilantin infusion was initiated at 10:00 p.m. **Doc. 94, Ex. 2 & 3**. Plaintiff's answers to interrogatories state that, during the six and one half hours before he arrived at St. Louis University Hospital, he suffered severe physical pain, and, based on information that had been communicated to him by Dr. Fleming, he suffered fear and apprehension that his condition would deteriorate, causing irreparable physical damage or even death. **See, Doc. 94, Ex. 9**. A delay in treatment can constitute deliberate indifference. **See,** *Gutierrez v. Peters*, **111 F.3d 1364, 1371-1372 (7th Cir. 1997).**

## Recommendation

Fro the foregoing reasons, this court recommends that Defendants' Motion for Summary Judgment **(Doc. 90)** be **DENIED**.

Objections to this Report and Recommendation must be filed on or before **June 9, 2008.**

**Submitted: May 22, 2008.**

               **s/ Clifford J. Proud**
               **CLIFFORD J. PROUD**
               **UNITED STATES MAGISTRATE JUDGE**